## DEMPSEY N. SOLOMON

*v.*

## CHARLES G. NICHOLAS.

*Filed at Springfield March 30, 1885.*

1. AGENCY—*deposit of money of principal by the agent—depositary delivering the money to the principal—whether liable to the agent making the deposit.* A sub-contractor received money of the general contractor in excess of what was due him, as the agent of the general contractor, to pay debts due to laborers and material-men, whereby to protect the principal from liability from the enforcement of liens, but instead of paying out the money deposited it with another for safe keeping, under a promise of the latter to pay the same only to the depositor, or upon his written order. The depositary, on the demand of the principal to whom the money belonged, delivered the same to him. It was *held,* the depositary was not liable to the agent for a breach of his contract, the principal having the right to revoke the agency of the sub-contractor at any time before he paid out the money as directed. In such case the delivery of the money to the true owner will relieve the depositary of liability to the agent from whom he received it.

2. MECHANIC'S LIEN—*of laborers, etc., on railroad, under sub-contractor.* The stipulations in a general contractor's contract for the construction of a railroad were required to be performed in such manner as not to relieve him from the immediate charge and responsibility of the work, and were such that the company might forfeit the same for a neglect to put on sufficient force to complete the work in the time stipulated, or require him to make up balances due to laborers or persons furnishing materials or supplies, monthly. It was *held,* that the relations of the sub-contractor to the general contractor were such that the work done and materials furnished under sub-contracts could be regarded as materials furnished or labor done under his contract, so as to enable those furnishing the same to enforce a lien against the railroad under the statute.

3. SUB-CONTRACTOR—*a contract construed as to the relative rights and powers of the general contractor and the sub-contractor.* Where a general contractor for building a railroad is held liable to the railway company to protect it against liens of laborers and material-men, in a contract sub-letting a part of the work, reserved the option to retain in his own hands the amount of estimates, or such part thereof as he might deem necessary, and pay the laborers and other creditors of the sub-contractor, and charge the amount thereof as so much money paid to him, the general contractor may keep back estimates due the sub-contractor, and pay it out on debts incurred by him in attempting to perform his sub-contract, and in so doing the general con-

tractor can not be charged with meddling in his affairs; and such general contractor may make such payments through the sub-contractor, as his agent, or by any other agent.

4.   And where such general contractor has advanced money to a sub-contractor to pay debts, for which each is separately liable, he may, at any time before it is paid out, revoke the agency of the sub-contractor, and pay out the same through another agent, and charge the same to the sub-contractor, and deduct the same from the sum due him, in the next monthly estimates; and such sub-contractor whose debts are thus paid can have no cause of complaint.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Macoupin county; the Hon. W. R. WELCH, Judge, presiding.

Messrs. RINAKER & RINAKER, for the appellant.

Mr. B. R. BURROUGHS, and Messrs. CORN & SHIRLEY, for the appellee.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

Nicholas was a sub-contractor under Harris Bros. & Co., general contractors, for the doing of a part of the work of constructing the St. Louis, Jerseyville and Springfield railroad. Payments were usually made on the 15th of each month, on the engineer's estimates for the preceding month. On the 11th of August, 1881, Nicholas applied to Harris Bros. & Co. for, and obtained from them, $2500, in addition to the amount then due him on estimates under his subcontract, which amounted to $3000. Nicholas did not pay out this money to the laborers and others to whom he was indebted for work, etc., done on his sub-contract during the month of July, on the 15th of August, but on the 16th of that month he delivered it, inclosed in a shot-bag, to Faulkner, his general agent, requesting him to deposit it with Solomon, who was a general merchant at Palmyra, having an iron safe, with direction to Solomon that he should deliver it to no one

but Nicholas, unless upon the order of Nicholas, and then only in accordance therewith. On the evening of the same day, Faulkner, having previously inclosed in the bag with the money the pay-rolls upon which it was intended to be paid out to the creditors of Nicholas for labor done, materials furnished, etc., on his sub-contract during the previous month of July, deposited the bag with Solomon, directing him as requested by Nicholas, and Solomon accepted the deposit, promising to deliver it in accordance with this direction. Upon the following morning, (the 17th) Solomon, without any order from Nicholas, and in his absence, on the demand of Harris Bros. & Co., and upon receiving a bond of indemnity, delivered the deposit to them, and' thereupon Masten, the chief engineer of the railroad company, and the agent of Harris Bros. & Co., took the deposit, and on that and the next day paid the money all out to creditors of Nicholas, for labor done, materials furnished, etc., on his sub-contract during the previous month of July, as the amounts were specified on the pay-rolls inclosed with the money in the bag. A few hours after Solomon had delivered the deposit to Harris Bros. & Co., Nicholas called upon Solomon, and Solomon informed him that he had delivered the deposit to Harris Bros. & Co., and that their agent, Masten, had proceeded down the line of the road to pay off his men. On the next day Nicholas made a formal demand on Solomon for the delivery of the deposit to him. Nicholas brought an action of assumpsit against Solomon, filing simply the common money counts. Solomon pleaded *non assumpsit*, set-off, and a special plea that he had and did apply and pay out the said sums of money in the several counts of plaintiff's declaration mentioned, to and for the plaintiff, and at his special instance and request. Issue was joined on the several pleas.

Upon the trial Solomon offered to read in evidence certain clauses in the contract between Harris Bros. & Co. and the railroad company, whereby Harris Bros. & Co. were required

to complete the work within the time therein specified. The several stipulations of the contract are required to be performed in such manner as not to relieve Harris Bros. & Co. from immediate charge and responsibility of the work, nor to sub-let it, except with the approval of the railroad company, and providing for payments on estimates of the engineer to be made of work, on or before the 10th of the month, for labor and materials done and furnished for the preceding month, with retention by the company of ten per cent of the estimate, which was to be forfeited in case the work was not completed in the time and manner provided for, with full pay in case of final completion, and also providing for prompt execution of the work, with the right to the party of the second part to put additional hands on the work, or to declare forfeited the contract, if the party of the first part neglected to put on a sufficient force to complete the work in the time stipulated, and authorizing the railroad company to reserve the right to require Harris Bros. & Co. to make up balances due laborers or persons furnishing materials or supplies, of any description, of said work, on or before the 10th day of each month, for work done, etc., for them during the preceding month, placing the name of each laborer, and the amount due him or them, on an envelope, and place said envelopes in the hands of the railroad company, when the railroad company was to have said laborers and others paid the amounts due them, and to deduct the money so paid out from the current monthly estimates of Harris Bros. & Co. He also, at the same time, offered in evidence a clause in the sub-contract between Harris Bros. & Co. and Nicholas, whereby Harris Bros. & Co. reserve to themselves the option to retain in their own hands the amounts of estimates, or of such portions thereof as they may deem necessary, and pay the laborers and other creditors of Nicholas, and charge the amount thereof as so much money paid to him under the provisions of the sub-contract. Solomon then offered to follow this evidence by evidence that

at the time Nicholas obtained the $2500, he was actually indebted in that amount above the amount then due him upon estimates, to laborers and other creditors, on account of work done, etc., for him, while attempting to carry out his sub-contract during the previous month of July, as shown by the pay-rolls inclosed with the money in the bag; that he so represented to them when he applied for the money; that he was unable to raise the money to meet those debts, and so informed them; that they then, in order to prevent a cessation in the progress of the work, and to protect themselves against loss, placed the money in Nicholas' hands to pay those debts; that it was delivered by them and accepted by him on the condition alone that he was to take it and pay those debts; that after the payments were made by their agent, Masten, they charged the amount up in their account against Nicholas, and that Nicholas has never paid, or offered to pay, any of those debts since Masten paid them, but has ratified the payment of several of them,—all of which, on objection of Nicholas, the court refused to allow to be given in evidence.

This offer must be considered in connection with section 52, chapter 82, of the Revised Statutes of 1874, entitled "Liens," which gives to every material-man and laborer furnishing materials, supplies, etc., and doing labor for a contractor with a railroad corporation, a lien upon the property of the corporation. The relations of Harris Bros. & Co. to the railroad company, by virtue of their contract, were such that the work done and materials furnished under the sub-contract could be regarded as materials furnished or work done under their contract, and so enable those furnishing the materials and doing the work to enforce a lien, under the statute, against the railroad company. The railroad company would thus, in the event of the non-payment of these debts, be liable to the extent of its property against which the liens might be enforced, and to avoid that liability and protect itself against

loss it might forfeit the contract of Harris Bros. & Co., retain the ten per cent in its hands on the estimates, and take charge of the work and pay off the creditors itself. And Harris Bros. & Co., to avoid a forfeiture of their contract, and the loss of profits to be derived from its performance, and the loss of the ten per cent on estimates in the hands of the railroad company, are certainly authorized to exercise their privilege, under their contract with Nicholas, of retaining money due him on estimates, and paying it out on debts incurred by him in attempting to perform his sub-contract. The failure to pay these debts creates a direct liability in them. They owe the duty, certainly to the railroad company, if not directly to the material-men and laborers, to pay the debts which Nicholas has failed to pay. That liability is not contingent upon Nicholas having money due him upon estimates in their hands, but absolute, by virtue of their contract with the railroad company. As between Nicholas and them, they have reserved the right to pay these debts, and thus he can not be heard to say that in paying them they are simply intermeddling in his affairs. If they pay them before he has money in their hands, they may, under the contract, charge the amount to him, and deduct from his next estimates. Thus owing the duty of paying in the event of Nicholas not paying, we are unable to perceive any reason why that duty may not be discharged by an agent. Certainly, they might place the money in the hands of a third party, and direct him to make the payments, and his payments would be good. No one can question that. Then why can not Nicholas be that agent? If paying the debt to the material-men and laborers was doing no more than extinguishing his own liability, it is, of course, apparent that he would be acting simply for himself. But we have seen, paying the debt to them is not necessarily the mere extinguishing of his liability. So far as he is concerned, if it is paid by Harris Bros. & Co. it does not *extinguish* his liability at all. It *extinguishes their* liability

and *changes his* liability from the material-men, laborers, etc., to them. He owes the debt after as before the payment, only to a different party. As between Harris Bros. & Co. and Nicholas, we know of no reason why he may not consent to act as their agent in making such payments,—why he may not consent that their money in his hands remains their money, and that when he pays it to his creditors, under his sub-contract, it extinguishes the debt as to them, but changes the creditor only as to himself. Third parties might not be bound by such a contract, at least without notice, but as between the parties alone, it is different. They may consent to occupy any lawful relation to money in hand that they choose, and this surely is not an unlawful relation.

We think the tendency of the evidence offered was to prove this state of the case: . That the money was not loaned to Nicholas on his individual responsibility, but that it was placed in his hands to pay the debts contracted by him to his material-men and laborers, by Harris Bros. & Co., because they were legally bound to pay them in order to protect their interests under their contract with the railroad company; that the money was placed in his hands and accepted by him on condition that he was simply to take it and pay it out on those debts, and thus, in fact, as their. agent. If, as between Harris Bros. & Co. and Nicholas, the money was theirs, in his hands as agent, only, they could, of course, at pleasure revoke their agency and repossess themselves of the money at any time before it was paid out, and place it in the hands of a different agent. Although Solomon contracted to deliver the money to Nicholas only, he is absolved from liability by having delivered it to Harris Bros. & Co., the true owners. *"The Idaho,"* (93 U. S.) 3 Otto, 575.

Admitting the rejected evidence, the case seems destitute of all merit. The plaintiff applied to get money to pay certain debts,—that is, to change his debt from the laborers and material-men to the contractor. He got the money only on

condition that it should be thus applied, and it has been thus applied. The laborers and material-men are no longer his creditors,—the contractors have taken their place. He has lost nothing, and having consented to occupy the relation of agent with respect to the money, not even a technical right has been invaded. We are therefore of opinion that the court erred in excluding the evidence offered.

The judgment is reversed and the cause remanded.

*Judgment reversed.*